UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BARTLEY WYERS and KIMBERLY WYERS, | ] ] ] | |
| Plaintiffs, | ] ] | |
| vs. | ] ] | 7:09-cv-01347-LSC |
| FARM BUREAU INSURANCE OF N.C., INC., NORTH CAROLINA FARM FARM BUREAU INSURANCE GROUP, NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., and BRYAN MEINERT, | ] ] ] ] ] ] ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

Pending is a motion for summary judgment filed on October 15, 2010, by Defendants.  (Doc. 37.)  Bartley and Kimberly Wyers sued Defendants regarding a property insurance claim for Hurricane Katrina-related wind damage.  Plaintiffs assert claims for breach of an insurance contract, bad faith denial of their insurance claim, fraudulent suppression, fraud, conspiracy, and unjust enrichment. (Doc. 10 at 4-10.) Defendants now move

for summary judgment on all claims, primarily asserting that the statute of limitations precludes Plaintiffs' tort claims and that they performed the insurance contract. (Doc. 37 at 11-12.) The issues raised in Defendants' motion for summary judgment have been briefed by both parties and are now ripe for decision. After considering the legal arguments and presented evidence, Defendants' motion for summary judgment will be granted.

II.   Facts.[1]

Bartley and Kimberly Wyers purchased two poultry houses along with 130 acres of land and a house—all located in Eldridge, Alabama—for $265,000 in 1999. (Doc. 40-1 at 24.) Mr. Wyers places the value of the land itself between $1,500 and $2,000 an acre. (Doc. 40-1 at 54.) The poultry houses spanned forty feet by three hundred feet, dated to the 1970s, and stood on posts driven into dirt, not cement. The Wyers insured their property with a Farm Bureau policy.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

The policy covered each house for up to $75,000 of property damage resulting from named perils, including windstorm.  (Doc. 44-1 at 2,3, 29.) The policy, however, would not cover damage "relating to . . . design, specification, construction, workmanship or installation of property." (Doc. 44-1 at 29.) The Wyers made their first claim for wind damage in 2000, which they promptly settled with Farm Bureau.

On August 29, 2005, Hurricane Katrina caused wind damage to the poultry houses.  The Wyers submitted a claim to their agent the next day. Farm Bureau first assigned an independent adjuster to inspect the damage. Mr. Wyers provided the independent adjuster with an estimate for repairing the poultry houses.  The estimate, from Farmco Builders, proposed $57,750 per house because, Farmco stated, "[i]n order for house[s] to be repaired, [they] should be taken down . . . ."  (Doc. 37-11 at 16.)  The independent adjuster submitted a September 12, 2005 report that states "Insured claims houses have shifted.  Has estimates for both houses, $114,000 plus. Need to probably have engineer to confirm."  (Doc. 40-4 at 3.)  This report went to Farm Bureau's Cullman, Alabama office.

Farm Bureau reassigned the claim to its own adjuster, Defendant Bryan Meinert. Two weeks after the first adjuster's visit, Meinert inspected the poultry houses. According to Mr. Wyers, "he spent a few minutes, walked around, and come back and told me that his company didn't pay for engineering flaws." (Doc. 40-1 at 44.) Mr. Wyers had expected Meinert to stay longer and to inspect the trusses in the poultry houses. Mr. Wyers also testified to the following: "[Meinert said] if he had . . . an engineer to come out, the claim would be denied or rejected, most likely. And he said he would help me out with the room and the curtains." (Doc. 40-1 at 45.) Mr. Wyers provided a new estimate to Meinert, this one from Builders Unlimited. This estimate does not address structural issues and proposed $65,803.86 for repairing the electrical, plumbing, and feeding supply systems along with the monorail, though other evidence fails to corroborate problems with these systems.

On September 28, 2005, Meinert wrote a report to his supervisor, Leon Turner and included his own estimate which itemizes costs for fixing structural problems by bracing walls and fixing trusses:

> I inspected this loss yesterday. There is a lean condition on both poultry houses consistent with wind damage present on surrounding structures . . . [Mr. Wyers] has obtained estimates of repair for both houses in the amount of $57K per house . . . . I currently have an estimate on House 1 in the amount of $10,517, and House 2 of $14,677.50. . . . I believe that I can successfully negotiate this loss to reflect a fair settlement with our insured. I called ED&T [an engineering firm] this AM. It will be two weeks before they can do an onsite. . . . If I can keep our settlement on these poultry houses within a $30K range, I would like to proceed with settlement. . . .

(Doc. 42-4 at 7.)

Though Mr. Wyers wanted $115,500 in settlement, he ultimately settled for $25,195.00. The Wyers paid down a bank loan with most of the money and made a few simple repairs to the houses. In mid-2006, they stopped keeping chickens in the houses. Mr. Wyers later dismantled one of the houses and began using the other to store hay. Over three and a half years after the claim settled, Mr. Wyers talked to Daryl Burt, a lawyer and family friend. Soon after talking to Burt, the Wyers filed this lawsuit on June 3, 2009.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

    Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Defendants initially defend against Plaintiffs' claims by asserting the affirmative defenses of a valid accord and satisfaction[2] on the contract claim and the statute of limitations' general applicability. (Doc. 37 at 10, 13.) Regarding Plaintiffs' claims, Defendants contend that they cannot meet their burden of showing that (1) Defendants breached the insurance contract; (2) Defendants failed to pay the claim in bad faith; (3) Defendants fraudulently

---

[2] Summary judgment is inappropriate on Defendants' contractual defense of accord and satisfaction. Accord and satisfaction requires that Farm Bureau tender the settlement check as full satisfaction of the Wyers' insurance claim. Ala. Code § 7-3-311(a). Farm Bureau fails to meet its burden on the affirmative defense because the evidence suggests that Meinert failed to obtain a release on the Wyers' claim, a standard practice of his when settling claims. (Doc. 40-2 at 49.) Meinert also suggested that if the Wyers uncovered additional damage that he would reassess the settlement. (Doc. 40-2 at 35, 59.)

misrepresented or suppressed anything; (4) Defendants conspired against them; or (5) that Defendants were unjustly enriched.[3]  (Doc. 39 at 9-29.)

   A.   The Statute of Limitations.

Alabama law subjects fraud claims to a two-year statute of limitations period.  Ala. Code § 6-2-3.[4]  This two-year period also applies to conspiracy and bad faith claims.  Ala. Code § 6-2-38(l); *Boyce v. Cassese*, 941 So. 2d 932, 944 (Ala. 2006); *Dumas v. S. Guar. Ins. Co.*, 408 So. 2d 86, 89 (Ala. 1981). As a matter of law, "the limitations period begins to run when the plaintiff was privy to facts which would provoke inquiry in the mind of a person of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Auto-Owners Ins. Co. v. Abston*, 822 So.2d 1187, 1195 (Ala. 2001); *see also Blackburn v. Fidelity and Deposit Co. of Maryland*, 667 So. 2d 661, 668 (1995) ("a cause of action for bad faith refusal

---

   [3] To prevail on an unjust enrichment claim, the Wyers must "prove facts showing that [Defendants] hold[] money which, in equity and good conscience, belongs to [the Wyers] or hold[] money which was improperly paid to defendant because of mistake or fraud." *Dickinson v. Cosmos Broadcasting Co., Inc.*, 782 So. 2d 260, 266 (Ala. 2000).  The Wyers make no argument regarding their unjust enrichment claim, making summary judgment appropriate.

   [4] Alabama law provides a six year limitations period for actions based on contract.  Ala. Code § 6-2-34.  Farm Bureau does not argue that the statute of limitations prohibits the breach of contract claim.  (Doc. 37 at 9.)

to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of the facts which would reasonably lead the insured to a discovery of the bad faith refusal").

The alleged fraud occurred when Meinert purportedly represented that Farm Bureau's policy did not cover the damage to the Wyers' poultry houses. (Docs. 40-1 at 55.) Also, the Wyers support their bad faith claim with this representation. (Doc. 40 at 19.) Farm Bureau later offered to settle the claim for $25,195. When Farm Bureau made that offer, Mr. Wyers knew Farm Bureau deemed engineering defects the primary cause of the poultry house damages. He had repair estimates of $65,803.86 and $115,500. Mr. Wyers concedes that he thought the claim worth $115,500. (Doc. 40-1 at 53.) But he did nothing. Those facts would have provoked a person of reasonable prudence to investigate whether the damage to the chicken houses stemmed from wind or engineering defects.

A reasonable person, in particular, would have taken some action, such as hiring an engineering firm or consulting with an attorney. At least, a reasonable person would have invoked the procedure outlined in his insurance policy, "[i]f [he and Farm Bureau] fail[ed] to agree on the value

or amount of any item or loss. . . ." (Doc. 44-1 at 7.) He chose not to invoke the procedure. Instead, he agreed to accept an amount closer to Farm Bureau's estimates than his, even though he "disagreed with that claim payment." (Doc. 40-1 at 52.) The statute of limitations period for the Wyers' claims for fraud, bad faith, and conspiracy began to run in September 2005. Their 2009 filing is thus untimely.

    B.    Farm Bureau's Argument That the Wyers Have Failed to Meet the Elements of Their Claims.

        1.    Breach of Contract.

"A contract of insurance, like other cont[r]acts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001). A breach of contract claim requires a plaintiff to show the following: (1) existence of a valid contract; (2) performance by plaintiff; (3) nonperformance by defendant; and (4) damages. *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999). Farm Bureau contends that it performed its obligations under the insurance contract because the insurance policy covered windstorm damage, not damage from structural deficiencies. (Doc. 43 at 12; Doc. 44-1 at 29.) Neither party

disputes that an insurance contract existed, that the contract extends coverage for wind damage, but not structural deficiencies, that the Wyers paid the premiums, or that Farm Bureau extended coverage exceeding $25,000.

Rather, the Wyers contend that Farm Bureau did not pay enough. Yet in order to show breach, the Wyers must proffer evidence of Farm Bureau's non-performance. In this case, they could have done so by establishing that the wind caused more damage than the $25,195 in provided coverage. They have not. Conversely, Mr. Wyers himself confirmed that the houses were leaning prior to Hurricane Katrina, suggesting Hurricane Katrina's wind damage did not cause all the damage: "For 30 years . . . both [houses] were perfectly plumb?" Mr. Wyers: "No, that's not right." (Doc. 40-1 at 50.) The Wyers thus fail to meet their burden of establishing Defendants' nonperformance.

    2.    Fraud, Conspiracy, and Bad Faith Claims.

Even if the statute of limitations did not make the Wyers' fraud, fraudulent suppression, conspiracy, and bad faith claims untimely, the Wyers cannot meet their prima facie cases for the claims.

Fraud requires a misrepresentation.  *See Exxon Mobil Corp. v. Ala. Dept. of Conser. & Natural Res.*, 986 So. 2d 1093, 1114 (Ala. 2007).  The Wyers fail to establish one.  They rely on Mr. Wyer's recalling the following statements to establish a misrepresentation.  (Doc. 40 at 31.)  The adjuster stated that "the company [didn't] pay for engineering flaws."  (Doc. 40-1 at 45.)  And the adjuster said that "[Farm Bureau] can get an engineer out, but he told me if they did, the claim might be rejected as a whole."  (Doc. 40-1 at 45.)  Both are true.  The policy does not pay "for loss which results from . . . an act . . . relating to . . . design, specification, construction, workmanship, or installation [or] unsoundness in materials used in construction. . . ."  (Doc. 44-1 at 29.)  Farm Bureau does not pay for engineering flaws.  If an inspection deemed the entire loss a result of flaws, under the contract, the claim "might [then] be rejected as a whole."  (Doc. 44-1 at 29.)  No misrepresentation has been demonstrated.

Plaintiffs attempt to coax a misrepresentation out of the first statement by saying that Mr. Wyers "understood this statement to be a representation that the adjuster had concluded that the damage to his chicken houses was the result of poor construction."  (Doc. 40 at 31.)  The

Wyers cite no law supporting their contention that a "reasonable interpretation" of a true statement can create a misrepresentation. (Doc. 40 at 31.) In addition, the Wyers submit no evidence suggesting that the damage was not the result of poor construction. Farm Bureau, in any event, did not conclude that all the damage resulted from "poor construction." Rather, it compensated the Wyers for damage it deemed wind-related, minimizing Mr. Wyer's ability to rely on a "reasonable interpretation" of the adjuster's early opinion.

Fraudulent suppression requires a duty to disclose material facts. *See Freightliner, LLC v. Whatley Contract Carriers, LLC*, 932 So. 2d 883, 891 (Ala. 2005). "When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested." *Mason v. Chrysler Corp.*, 653 So.2d 951, 954-55 (Ala. 1995). Plaintiffs fail to provide any evidence that this contractual relationship was not at arm's length or suggesting that they requested information from Farm Bureau.

All bad faith claims require a showing that the insurer had no debatable reason to refuse payment on the claim. *Employees' Benefit*

*Assoc. v. Grissett*, 732 So. 2d 969, 976 (Ala. 1998).  Assuming that partial payment still suffices as refusing payment, Farm Bureau nonetheless did have a debatable reason: The policy did not cover the damage. The insurance contract, in particular, did not cover damage resulting from poor construction; it covered wind damage.  Farm Bureau reimbursed the Wyers $25,195 for covered wind damage.  In addition, the Wyers provide no evidence that wind caused damage exceeding that figure.

V.  Conclusion.

For the reasons set forth above, Defendants' motion for summary judgment (Doc. 37) will be GRANTED.  A separate order will be entered.

Done this 25th day of May 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
159890