

FILED
2011 Nov-04  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BARTLEY WYERS and KIMBERLY WYERS, | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | 7:09-cv-01347-LSC |
| | ) | |
| FARM BUREAU INSURANCE OF N.C., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

### I.   Introduction.

Pending are two motions filed by Plaintiffs Bartley and Kimberly Wyers ("Wyers"), a motion to reconsider the Court's grant of summary judgment (Doc. 47) and a motion to strike Defendants' response to that motion (Doc. 49). Because the late filing of Defendants' response appears inadvertent, the Court denies Plaintiffs' motion to strike. (Doc. 49.)

With regard to the motion to reconsider, the Wyers primarily contend that this Court erred in finding that the statute of limitations barred their bad faith, fraud, and conspiracy claims. They also argue that the Court needs to reconsider its holding on

the breach of contract claim.  The Court denies the Wyers' motion to reconsider and thereby reaffirms its grant of summary judgment to Defendants.

## II.     Standard of Review.

Federal Rule of Civil Procedure 59(e) serves a narrow function.  "[T]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (citations omitted).  A litigant cannot use the Rule "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (citing *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998)).  A Rule 59(e) motion should not be used "to raise an argument that was previously available, but not pressed."  *Stone*, 135 F.3d at 1442.

## III.    Discussion.

### A.     The Statute of Limitations.

Plaintiffs contend this Court erred in finding that the statute of limitations had run on the claims of bad faith, fraud, and conspiracy.  (Doc. 47.)  Specifically, they argue that "[t]he question of when the statute of limitations begins to toll on claims

of bad faith failure to pay, fraud, and conspiracy are questions [sic] for the jury."
(Doc. 47 at 30.)  This is not always the case.

Plaintiffs are correct insofar as the question of when a "party discovered or
should have discovered the fraud is generally one for the jury." *Liberty Nat'l Life Ins.
Co. v. Parker*, 703 So. 2d 307, 308 (Ala. 1997).  However, such claims may also be
decided as a matter of law.  *See, e.g., Smith v. Evans*, 829 So. 2d 774, 778 (Ala. 2002);
*see also RaCON, Inc. v. Tuscaloosa County*, 953 So.2d 321, 336 (Ala. 2006).  Alabama
has rejected the "justifiable reliance" standard that Plaintiffs appeared to rely upon,
choosing instead the "reasonable reliance" standard on fraud and similar claims.
*Foremost v. Parham*, 693 So. 2d 409, 421 (Ala. 1997).  Fraud, bad faith, and conspiracy
statutes of limitations begin to run "when the plaintiff was privy to facts which would
provoke inquiry in the mind of [a person] of reasonable prudence, and which, if
followed up, would have led to the discovery of the fraud." *Auto-Owners Ins. Co. v.
Abston*, 822 So. 2d 1187, 1195 (Ala. 2001) (citations omitted).

Plaintiffs contend that they did not actually know facts sufficient to place them
on notice of fraud.  They suggest, for example, that they did not know that Defendant
Meinert lacked expertise in poultry houses, that Defendant Farm Bureau had deemed
an engineer necessary and failed to hire one, or that Defendant Meinert had

erroneously calculated the value of the damage.  (Doc. 47 at 31.)  Plaintiffs contend

that knowledge of this information would be necessary to place them on notice.

Even if true, Plaintiffs' lack of knowledge of those particular items is irrelevant.

Alabama law does not require a person to be omniscient, just aware of enough facts to

place a reasonable person on notice. *See, e.g., Smith v. Evans*, 829 So. 2d 774 (Ala.

2002).  For example, Alabama law does not require that Plaintiffs be aware of the

fraud itself.  *See, e.g., Abston*, 822 So. 2d at 1195.  Plaintiffs only have to be aware of

facts that would prompt them to follow up and discover the fraud.  *Id.*  Here, the

Wyers were aware of a substantial disparity between what they thought concerning

their chicken houses and what Farm Bureau said concerning them.   Mr. Wyers

presented Farm Bureau with an estimate of repair he had obtained totaling $115,500,

which he believed his claim was worth.  (Doc. 40-1 at 53; Doc. 45 at 9.)  Plaintiffs also

contended the structures had shifted and would have to be taken down and rebuilt.

(Doc. 37-11 at 15.)  Farm Bureau's adjuster, after inspecting the structures, told

Plaintiffs that the policy did not cover "engineering flaws" and informed Plaintiffs

that if he had an engineer inspect the structures, the claim would likely be denied

outright.  (Doc. 40-1 at 45.)  Plaintiffs have presented nothing to indicate that an

engineer would not have discovered such flaws.  Farm Bureau and Plaintiffs settled

at $25,195, the amount of Farm Bureau's estimate it had obtained for repairing the structures. Plaintiffs knew that their estimates were substantially higher and included completely rebuilding the structures. They knew that Farm Bureau had not had an engineer look at the structures. Mr. Wyers knew that Defendant Meinert only "spent a few minutes, walked around, and come back and told me that his company didn't pay for engineering flaws." (Doc. 40-1 at 44.) Plaintiffs also had filed a prior wind damage claim with Farm Bureau in 2000 and thus had experience with these types of claims. (Doc. 40-1 at 21.) Plaintiffs are not arguing over a mere pittance. These facts would lead any reasonable person to suspect foul play afoot and follow up.

The Court notes that Plaintiffs strongly suggest that the Court is relying on Plaintiffs' abilities to read documents. (Doc. 52 at 25-26.) This is not true. The Court does state that the Wyers could have read their insurance policy when following up on the fraud, but they did not need to read the document to find facts that would warrant following up. What they knew was more than enough to prompt a reasonable person to follow up. Yet they did not, despite having several avenues to do so, as this Court indicated in its previous opinion. (Doc. 45 at 9-10.) For instance, the Wyers could start by reading their insurance policy and discerning the proper procedure to contest disputed values. (Doc. 45 at 9-10.) Plaintiffs respond that the procedure is

inapplicable to the poultry houses.  (Doc. 47 at 9.)  Further, Plaintiffs contend that the policy is "ambiguous," which should be held against Defendants.  (Doc. 47 at 32.)

Plaintiffs' policy is clear in its terms.  One of the Wyers' coverages is Coverage F, which applies to "Farm Barns, Buildings and Structures."  (Doc. 44-1 at 41.) Noting their bold font and italic emphasis, Plaintiffs appear to agree that Coverage F covers the chicken houses.  (Doc. 47 at 9.)  However, Plaintiffs then disregard key language, which should lead a reasonable person to the procedure.  Coverage F reads in part that it "is subject to all policy terms that apply to property coverages unless amended by this form."  (Doc. 44-1 at 41.)  The property coverage outlines the procedure, noting that  "[i]f you [Plaintiffs] and we [Farm Bureau] fail to agree on the value or amount of any item or loss, either [party] may demand an appraisal of such item or loss."  (Doc. 44-1 at 7.)  The provision then continues, describing payment of appraisers, time limits, and submission of a report.  (Doc. 44-1 at 7.)  The Wyers were aware that there was a disagreement on value—Farm Bureau said the damage was worth $25,000, and Plaintiffs said it was worth over $100,000.  Plaintiffs should have utilized this procedure.

Furthermore, the Court identified other avenues, such as "hiring an engineering firm or consulting with an attorney."  (Doc. 45 at 9.)  The Wyers

disagreed over a substantial sum of money—thus, it is reasonable that they would hire a third party to evaluate the situation and advise them.  Consulting with an attorney presented a viable option, one they eventually chose.  Even if the Wyers did not hire an attorney or engineering firm, they could have consulted anyone, a relative, a friend, or any third party to ask them about the settlement.  There is no indication the Wyers did any of this.  Further, as this was was not their first wind damage claim, the Wyers should have attempted to follow up.  (Doc. 40-1 at 21.)

Ultimately, Plaintiffs have failed to present this Court with anything new.  Plaintiffs have also failed to point to any errors of law. This Court has revisited the merits of its ruling on the statutes of limitations and declines to change its holding.

### B.    Breach of Contract.

The Wyers also contend that this Court erred in granting summary judgment to Defendants on the breach of contract claim.  Plaintiffs advance several arguments.  First, they contend that the wording of the contract covers any damage, so long as wind is involved and, further, that a jury should have decided what was covered under the contract.  (Doc. 47 at 16.)  Second, Plaintiffs argue that they provided evidence that the claim was worth more than the amount paid.  (Doc. 47 at 17.)

"A contract of insurance, like other cont[r]acts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) (citing *Pate v. Rollison Logging Equip., Inc.*, 628 So. 2d 337 (Ala. 1993). Thus, a breach of contract requires: "(1) the existence of a valid contract binding the parties in the action, (2) his [a plaintiff's] own performance under the contract, (3) the defendant's non-performance, and (4) damages." *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999) (quoting *Southern Medical Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995)). "The intention of the parties controls in construing a written contract." *Loerch v. Nat'l Bank of Commerce of Birmingham*, 624 So. 2d 552, 553 (Ala. 1993). Furthermore, "[w]hen the language of an insurance policy is clear and unambiguous it must be construed as it reads." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 325 (Ala. 1999) (citations omitted).

Coverage F of the policy is a particular type of insurance contract called a named perils policy. Coverage F includes a "FARM PERILS SECTION," in which specific perils are listed, including windstorm. (Doc. 44-1 at 42.) As noted in the previous section, Coverage F also provides it is "subject to all policy terms that apply to property coverages" unless otherwise provided. (Doc. 44-1 at 41.) This plain language would seem to make the exclusions from the property coverage section, such

as "Neglect," "Wear and Tear," and "Intentional Acts" (Doc. 44-1 at 28-29), a part of Coverage F as well. Yet even if this were not the case, such events would still be excluded: since Coverage F lists the specific perils it covers, it excludes all others by definition. *See, e.g., Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) ("[A] named perils policy covers only losses suffered from an enumerated peril.") (citations omitted). Put another way, by including a series of named perils such as windstorms and not referencing others such as design defects, Farm Bureau is covering windstorm damage and not covering design defects.

Insurers have the right to craft policies with narrow coverage. *See St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So. 2d 1375, 1377 (Ala. 1992). Alabama courts have acknowledged that a "named perils" policy "is very limited in scope and coverage," which contrasts with a broader "all risk" policy. *State Dept. Of Ins. v. Arthur J. Gallagher & Co.*, 622 So. 2d 370, 372 (Ala. Civ. App. 1993). Furthermore, under "all risk" policies, the insurer normally limits its liability through exclusions. In that case, the insurer must often invoke an exclusion to contest a claim and "has the burden of proof in asserting that a claim is excluded under its policy of insurance." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 697

(Ala. 2001).  A named perils policy works differently, as a plaintiff has the burden to provide evidence that the damage fits within the "enumerated causes provided in the policy." *State Farm Fire & Cas. Co. v. Shady Grove Baptist Church*, 838 So. 2d 1039, 1043-1044 (Ala. 2002).

Plaintiffs have, at best, put together a prima facie case that wind from Katrina contributed to *some* damage to the Wyers' chicken houses.  (Doc. 52 at 11-12.) However, Farm Bureau does not have to prove that wind was not involved at all. Their settlement of $25,195 suggests they thought the wind may have caused some damage, just not the overwhelming structural damage Plaintiffs claimed.  This, they concluded, was the result of engineering and/or construction flaws.

Moreover, Plaintiffs' interpretation would invite an absurd result with a named perils policy.  For instance, under Plaintiffs' reading of the policy, Mr. Wyers could have intentionally chainsawed through all but a fragment of the support posts and beams.  Once the normal and expected amount of wind blew, the already intentionally destroyed chicken house supports would fail.  Continuing Plaintiffs' reasoning, Plaintiffs would be due full damages, all because the wind played *some* role in the collapse of the structures, regardless of the fact that their intentional act was the

primary cause.  This is obviously not in keeping with the intent of the parties or the terms of the contract.

### C.    Bad Faith.

Plaintiffs  contend the Court misapplied Alabama law on bad faith, and committed "manifest errors of law" in its opinion in this area. (Doc. 47 at 19.) According to Plaintiffs, the Court erred by citing an Alabama case which relied on authorities that predated the Alabama Supreme Court's recognition of the distinction between "normal" and  "abnormal" bad-faith cases in *National Life Ins. Co. v. Dutton*, 419 So. 2d 1387 (Ala. 1982). The Court is, and was, fully aware of that distinction, and finds no basis in Plaintiff's arguments to revisit its earlier decision.

The fact remains that because Plaintiffs have failed to show breach of contract, they cannot prevail on their abnormal bad faith claim. The Alabama Supreme Court has "ma[d]e it clear that in order to recover under a theory of an abnormal bad-faith failure to investigate an insurance claim, the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Nat'l Ins. Ass'n v. Sockwell*, 829 So. 2d 111, 131 (Ala. 2002) (quoting *State Farm Fire*

*& Cas. Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999)).  This rule applies when a plaintiff

sues an insurer for breach of contract and abnormal bad faith.  *Id.*  Incidentally, the

same is true of normal bad faith failure to pay.  *See Ex parte Safeway Ins. Co. of Ala.,

Inc.*, 990 So. 2d 344, 351 (Ala. 2008) ("Breach of an insurance contract is an element

of a bad-faith-failure-to-pay claim."). The Court does not find manifest error in its

earlier opinion.

>    **D.    Kimberly Wyers' Claims**.

Plaintiffs argue that Kimberly Wyers' claims should be treated separately from her

husband's, and contend that the Court erred by granting summary judgment on her

claims as well as his. (Doc. 47 at 31-32.) In support of this assertion, they cite case law

for the proposition that "one spouse's signature on a contract does not bind a

nonsigning spouse." *Poarch v. Alfa Mut. Ins. Co.*  799 So. 2d 949, 955 (Ala. Civ. App.

2000)[1]. In *Poarch*, the court affirmed the trial court's denial of summary judgment as

to a husband's claims where only his wife had signed a written release. *Id.*  Plaintiffs

stress that this was the case "even though the husband was involved in the settlement

negotiations." (Doc. 47 at 34.) But this fact actually cuts against Plaintiffs' argument,

---

[1]Although Plaintiffs twice cite *Poarch* as being from the Eleventh Circuit Court of Appeals
in their most recent submission (Doc. 55 at 10), their earlier motion correctly cites it as being from
the Alabama Court of Appeals. (Doc. 47 at 34.)

since the husband's involvement up until the release would, if anything, diminish the apparent authority of the wife to sign the release on his behalf. By contrast, here it was Mr. Wyers who received the settlement check, and also Mr. Wyers who alone filed the claim, obtained estimates, and met with the adjusters. In his own words, he took care of everything involving the poultry business "[a]s far as operations and maintenance and finance." (Doc. 40-1 at 37.) Mrs. Wyers, meanwhile, did not "handle any part of it." (*Id.*) As Alabama courts have recognized, such inquiries turn on the individual facts of the case, and the differences make reliance on *Poarch* here unconvincing. *See, e.g., Atchison v. Boone Newspapers, Inc.*, 981 So.2d 427, 434 (Ala. Civ. App. 2007) ("The differences [in] the facts of the present case . . . render the holdings in those cases inoperative.").

Although not directly argued by Plaintiffs, another point in *Poarch* does warrant discussion here. The court there noted that "the determination of apparent authority and the question of agency generally is a question of fact for the jury." *Poarch*, 799 So.2d at 955. In the present case, however, this poses no obstacle to summary judgment. If Mr. Wyers acted as agent for his wife as well as on his own behalf, then summary judgment would obviously been properly granted as to her claims. But if Mr. Wyers did *not* act as her agent, then the same result would follow, and summary

judgment would be appropriate due to her failure to give notice of her claim to Farm Bureau.

The policy at issue required the Wyers to give "prompt notice" of any claim. (Doc. 44-1 at 32.) In Alabama, insurance contract clauses requiring that notice be "prompt," "immediately," or "as soon as practicable" are enforceable, and are alike construed to mean that "notice must be given within a reasonable time in view of the facts and circumstances of the case." *Haston v. Transamerica Ins. Servs.*, 662 So.2d 1138, 1141 (Ala. 1995). In assessing reasonableness in this context, "the only factors to be considered are the length of the delay in giving notice and the reasons therefor." *U.S. Fidelity and Guar. Co. v. Baldwin County Home Builders Ass'n, Inc.*, 770 So.2d 72, 75 (Ala. 2000).

Generally the question of reasonableness will present a question for the trier of fact, but "where an insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice." *Id.* (quoting *Southern Guaranty Insurance Co. v. Thomas*, 334 So.2d 879, 882-83 (Ala.1976)). Numerous Alabama cases have held delays shorter than the present one to be unreasonable as a matter of law. *See, e.g., Haston*, 662 So. 2d at 1141 (delay of over two

years); *Pharr v. Continental Cas. Co.*, 429 So.2d 1018, 1019-20 (Ala. 1983) (delay of less than eight months); *Thomas*, 334 So. 2d at 882-83 (delay of six months). If Mr. Wyers did not act as agent for his wife, then her own failure to independently give notice, let alone "prompt" notice, serves to bar her claims as a matter of law.

Plaintiffs' attempt to have it both ways—that Mr. Wyers acted as agent for his wife with respect to the giving of notice, but nothing else—is unconvincing and unsupported. Moreover, their assertions that the Court dismissed Kimberly Wyers' claim "without discussion" (Doc. 47 at 34) is simply unfounded. The reasoning given for the Court's original decision as to Mr. Wyers applies equally to Mrs. Wyers, and was addressed to both of their claims together. As such, the Court finds no "manifest error of law or fact" that would justify granting the Plaintiffs' Rule 59(e) motion. The request to reconsider or amend the Court's ruling of summary judgment as to Mrs. Wyers' claims is denied.

## IV.   Conclusion.

In their brief, Plaintiffs' counsel quote and cite *Howard v. Mutual Sav. Life Ins. Co.*, 608 So. 2d 379 (Ala. 1992) for the proposition that deciding when statutes of limitations begin to toll on fraud should only be done "in cases where the plaintiff *actually knew* of facts that would put a reasonable person on notice of fraud." (Doc.

47 at 31.) (quoting *Howard v. Mutual Sav. Life Ins. Co.*, 608 So. 2d 379, 382 (Ala. 1992)). *Howard*, decided in 1992, quotes the standard developed in *Hicks v. Globe Life & Accident Ins. Co.*, 584 So. 2d 458, 463 (Ala. 1991). *Hicks* was overruled, however, in *Foremost v. Parham*, 693 So.2d 409 (Ala. 1997). *Foremost* explicitly states: "[W]e overrule *Hicks*, to the extent that it changed the standard that had previously existed for determining the statue of limitations issue in fraud cases." *Foremost*, 693 So. 2d at 421. *Foremost* returned to the "reasonable reliance" standard. *Id.* The standard, as cited in this Opinion as well as this Court's original opinion (Doc. 45) is "when the plaintiff was privy to facts which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Abston*, 822 So. 2d at 1195 (citations omitted). The Court will assume that Plaintiffs' counsel were unaware of this error and not intentionally attempting to mislead the Court. Plaintiffs do cite the correct standard in their response to Defendants. (Doc. 52 at 25.)

The Court denies the Wyers' motion to reconsider (Doc. 47), finding that Plaintiffs failed to provide anything more than recitations of prior arguments. Even so, the Court has considered them in turn and has found that the bad faith, fraud, and conspiracy claims are barred by the two-year statute of limitations. The Court has also

found that Plaintiffs have failed to offer any evidence to support a breach of contract

claim for either of the Wyers. A separate order will be entered.

Done this 4th day of November 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[167037]